## Isham Burnett v. John W. Luttrell.

1. CRIMINAL CONVERSATION—*Burden of Proof.*—In actions for criminal conversation, the burden of proving the alleged guilt of the defendant is upon the plaintiff.

2. INSTRUCTIONS—*Refusal to Give, Not Always Error.*—It is not error to refuse an instruction when the principle of law contained in it is embodied in others given.

3. EVIDENCE—*Of Defendant's Wealth in Criminal Conversation Cases.*—The refusal to admit evidence of the defendant's wealth in an action for criminal conversation is not reversible error when the jury find that the plaintiff has sustained no damages.

**Memorandum.**—Action for criminal conversation. Appeal from the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 4, 1893.

The opinion states the case.

M. T. LAYMAN and R. YATES, attorneys for appellant.

CHARLES A. BARNES and MORRISON & WORTHINGTON, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was an action on the case for *Crim. Con.* commenced in February, 1872, by appellant against appellee, which was tried by jury and resulted in a verdict and judgment for the defendant.

The parties are brothers-in-law, appellee's wife being appellant's sister. They lived on adjoining farms, and the families were intimate for many years, until September, 1891, when appellant, unseen and laboring under suspicions, saw his wife and appellee together in the yard, under circumstances which, if as he states them, would indicate an improper intimacy. He then made a violent assault upon appellee, afterward filed a bill for divorce, which he dismissed, and then another, to which an answer and cross-bill for separate maintenance were filed, all of which were dismissed and settled by an agreement for separation and for disposition of the property they owned.

The case made for appellant consisted largely of acts of personal familiarity, occurring from time to time during a period of seven years before suit brought—some half dozen in all—which might have been entirely innocent, considering the relations of the parties, but easily misconstrued, exaggerated or perverted by a prejudiced, depraved or suspicious mind. Each was testified to by a single, uncorroborated witness, and was denied, explained or not remembered by appellee, no other, competent to testify, being claimed to have been present; and as to some of them, there were other circumstances tending to impeach their accuracy or their credibility.

In addition to these instances of alleged improper intimacy, three others were testified to, which, if true, admit of no explanation consistent with innocence; one by a man whose wife was a sister of appellant, one by his wife and the other by his son. Each of these men was confessedly playing the part of a spy, with suspicions already entertained. They had removed to Kansas, where their depositions were taken after they had been seen by appellant and had given him their affidavits. The general reputation of each for veracity was fairly impeached. It was from intimations by the son that appellant got the idea of the wrong here charged. He was separated from his own wife in December, 1891, after a cohabitation of less than three years, and his testimony, as it appears in the record, indicates an

element of character, other than for truth, which might also go to discredit him. The act testified of by his mother, though an improper liberty, and not resented as it deserved to be, might have been misapprehended by the witness; nor would it, of itself, have warranted the conclusion claimed. It did not interrupt their social relations.

Appellant's wife could not be a witness in the case, but he introduced in evidence, over appellee's objection, their agreement for separation, from which it may be inferred that she declared her innocence under oath; for it recites that she had obtained an injunction against him on her bill for separate maintenance. So far as appears she had always borne a good character as a wife, and was the mother of seven children.

Appellee also had reached a time of life at which the passions of men generally are cooled, and was the father of five children, of whom two were dead and two married. His relationship to appellant's wife, while it justified some freedom of manner in his personal association with her, especially forbade and repelled all inclination to the act here charged. He emphatically denied the statements of appellant and his witnesses so far as they imputed to him any impropriety in his conduct with or toward her, or that any was at any time committed or intended. He gave his version of what took place on the occasions referred to by him and them, so far as he admitted having any remembrance of such occasions, which was innocent and not unnatural or improbable in itself. Of some he disclaimed all recollection, and denied the occurrence of others.

Four or five testified to statements made by appellant out of court, tending to contradict or weaken his testimony, all of which he denied.

It is deemed unnecessary to state the evidence at greater length. Having considered it all, with the aid of counsel's suggestions, we are satisfied that it fairly supports the verdict. In no kind of case is the juror's advantage in seeing and hearing the witnesses greater, or their finding to be more respected than in this.

Were they deprived of any proper means of reaching the truth, or materially misled as to their proper use, in any particular, by error of the court?

Appellant was not allowed to state what he was worth when he made the agreement with his wife for their separation. We understand that such evidence is admissible in such cases generally. Here it was the last item offered in chief, and he was recalled to prove it. He had been examined at length without directly touching this point, and had put in evidence the agreement itself, which showed enough as to his pecuniary condition, for all legitimate purposes of the question. The court has some discretion as to allowing a witness to be recalled. If it was not properly exercised in this instance, what was the harm? The evidence was admissible with sole reference to the measure of damages. If there were no damages it would have been useless, and the jury found that there were none.

Mrs. Ogan, a witness for appellant, identified a note received by her through the mail, without signature and in an unknown hand, stating in substance that the writer had heard appellee say he would give her a liberal reward if she would keep still and not appear on the trial against him. It was offered in evidence and we are surprised to learn that its rejection is complained of. It had no quality of evidence. An instruction asked for appellant was refused, as "duplicated and triplicated," but counsel say they find no other in the case which declares that plaintiff may recover damages "for the shame and disgrace of his children."

Three other instructions, which were given, told the jury what they might consider in estimating the amount of plaintiff's damages, if any; among which in one was "the mortification of the husband and his sense of shame," in another "his mental suffering from the dishonor of the marriage bed," and in the third "the social position of the parties and the family of plaintiff."

If the one refused really meant that he "could recover for the shame and disgrace of his children," we do not concede its soundness. If it means that he could recover for his

own suffering from their shame and disgrace, which is a more accurate statement, we think it is substantially given in each of the other three.

The refusal of another (numbered 7), also complained of, was not error, for the same reason.

Six instructions were given as asked for appellee. By the first it was announced that the burden of proof was on the plaintiff, "to show to the satisfaction of the jury the alleged guilt of the defendant as charged," while by the last it was twice distinctly stated that only "a preponderance of the evidence" was required. Neither of the others contained anything on that subject, nor did any of those given for appellant.

The measure of proof was inaccurately stated in appellee's first; but it is hardly possible to suspect that it may have misled the jury or that the error affected, much less produced, their finding. The sixth told them correctly what measure of proof should satisfy them, and we can not doubt that this was understood to be in affirmance of the position we may feel sure was taken by counsel on both sides, in argument. Believing that appellant was not materially prejudiced by any ruling or by the giving or refusal of any instruction, by the court, and that justice has been done by this judgment, it will be affirmed.